# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **ATLANTIC MARINE ALABAMA, LLC,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| vs. | ) CIVIL ACTION NO. 09-0330-KD-M |
| | ) |
| **C & M MARINE SERVICES (USA), INC.,** | ) |
| | ) |
| **Defendant.** | ) |

## ORDER

Default having been entered by the Clerk (doc. 15), this action is now before the Court on the application for entry of default judgment filed by plaintiff Atlantic Marine Alabama, LLC (Atlantic) (doc. 16). Upon consideration and for the reasons set forth herein, the application for entry of default judgment is **GRANTED as to Counts One and Two but DENIED as to Count Three**. Default Judgment shall be entered by separate document as required in Rule 58 of the Federal Rules of Civil Procedure. Count Three is **DISMISSED** for failure to state a claim upon which relief can be granted.

Atlantic's application for pre-judgment interest and post-judgment interest is **GRANTED.** Atlantic's application for attorney fees and costs under the Alabama Prompt Pay Act is **DENIED**. Atlantic is directed to this Court's Standing Order No. 13, which addresses the procedure for taxation of costs under Fed. R. Civ. P. Rule 54(d).

I.  Background

On December 5, 2006, Atlantic and C&M Marine Services (USA), Inc. (C&M) entered into a contract for the repair and conversion of the vessel Ice Maiden (the Agreement). The Agreement did not contain a provision for award of attorneys fees or costs upon default. The

Agreement did contain a choice of law provision providing that the "agreement shall be construed and interpreted in accordance with the laws of the State of Alabama . . ." (doc. 1, Exhibit A, Article XXI). The Agreement also contained a provision for arbitration of disputes (id. at Article XVI).

The vessel repair and conversion was completed and on June 17, 2008, Atlantic issued a final invoice to C&M in the amount of $565,163.56 for work performed on the vessel from April 28, 2008 through June 1, 2008. C&M did not pay the invoice. Atlantic contacted counsel for C&M to schedule an arbitration pursuant to the provisions in the Agreement but C&M refused to participate in the arbitration process (docs. 1, 12, 16).

On June 10, 2009, Atlantic filed suit against C&M for breach of contract, breach of arbitration agreement, and tortious interference with a contract and amended its complaint on July 9, 2009 (docs. 1, 12). On June 24, 2009, Atlantic served a waiver of service of summons upon C&M's registered agent by certified mail, return receipt requested (doc. 16, Exhibit A). On July 28, 2009, Atlantic personally served C&M's registered agent C.T. Corporation System, by serving "Washington Tran, in person", with a copy of the Complaint and First Amended Complaint (doc. 13, Return of Service, doc. 16-2, Return of Service). C&M did not file a responsive pleading or otherwise defend the suit. On August 21, 2009, Atlantic filed an application for entry of default which contained among other items, an affidavit of counsel for Atlantic outlining service upon C&M (docs. 14, 14-3, p.1-2). On August 25, 2009, the Clerk entered default as to C&M (doc. 15).

On September 18, 2009, Atlantic filed the pending application for entry of default judgment (doc. 16). This Court entered an order directing C&M to show cause why a judgment

by default should not be entered against it and a copy of the order was mailed to C&M's registered agent for service of process, CT Corporation (doc. 17). C&M did not respond to the order. The Court also ordered additional briefing on the issue of attorney fees and Atlantic has now filed its brief (docs. 18, 19).

II.     Analysis

Pursuant to Rule 55(a), entry of default by the Clerk should be made "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed.R.Civ.P. 55(a) (effective December 1, 2009). The Clerk entered default as to C&M on August 25, 2009, upon application by Atlantic supported by proof of service upon C&M and the absence of any response.

In regard to entry of a judgment by default by the Court, Rule 55(b) provides that "the party must apply to the court for a default judgment. . . . [and that the] . . . court may conduct hearings . . . when, to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." Fed.R.Civ.P. 55(b)(2) (effective December 1, 2009). Atlantic has now applied to this Court for entry of default judgment. However, a hearing is not necessary because Atlantic has provided the Court with sufficient evidentiary documents to enter a decision on the application for default judgment. This action was brought for breach of contract[1] to repair and convert a vessel. Atlantic submitted a copy of the parties' Agreement, the final

---

[1] Atlantic also plead for breach of arbitration agreement (doc. 1, Count Two). The arbitration agreement is found in Article XVI of the Agreement. Therefore, this claim is also a claim for breach of contract, i.e., breach of Article XVI of the agreement. Count Three for tortious interference with a contract is separately addressed herein.

3

invoice to C&M in the amount of $565,163.56, and an affidavit verifying the accuracy of the final invoice (doc. 16, Exhibits B and D). See Securities and Exchange Commission v. Smyth, 420 F.3d 1225, 1232 n.13 (11th Cir.2005) (finding that "where all essential evidence is already of record ..., such that any additional evidence would be truly unnecessary to a fully informed determination of damages."). In support of its claim for reasonable and necessary attorney fees in the amount of $34,367.50 and expenses and costs in the amount of $1,556.61, Atlantic has provided the affidavit of David S. Bland (doc. 16, Exhibit E).

     A. Personal jurisdiction

     The first amended complaint alleges that this Court has personal jurisdiction over C&M. Before default judgment can be entered the Court should determine whether it has personal jurisdiction. "A federal district court sitting in diversity may exercise personal jurisdiction to the extent authorized by the law of the state in which it sits...." Meier v. Sun International Hotels, Ltd., 288 F.3d 1264, 1269 (11th Cir.2002).

     In that regard, Alabama's long-arm statute, provides as follows:

> (b) Basis for Out-of-State Service. An appropriate basis exists for service of process outside of this state upon a person or entity in any action in this state when the person or entity has such contacts with this state that the prosecution of the action against the person or entity in this state is not inconsistent with the constitution of this state or the Constitution of the United States[.]

Ala. R. Civ. P. Rule 4.2 (b) (Effective August 1, 2004).

     Regarding Alabama's long arm statute, the Alabama Supreme Court held that the "extent of an Alabama court's personal jurisdiction over a person or corporation is governed by Rule 4.2, Ala. R. Civ. P., Alabama's 'long-arm rule,' bounded by the limits of due process under the federal and state constitutions." Ex parte DBI, Inc., - - - So. 3d - - - , 2009 WL 1164959, 7 (Ala.

May 1, 2009) (citing Sieber v. Campbell, 810 So.2d 641, 644 (Ala. 2001)); Hiller Investments Inc. v. Insultech Group, Inc., 957 So.2d 1111, 1115 (Ala. 2006) ("Rule 4.2, Ala. R. Civ. P., extends the personal jurisdiction of the Alabama courts to the limit of due process under the federal and state constitutions."). The Alabama Supreme Court further explained that it has "interpreted the due process guaranteed under the Alabama Constitution to be coextensive with the due process guaranteed under the United States Constitution." Ex parte DBI, Inc. at *7 (quoting Elliott v. Van Kleef, 830 So.2d 726, 730 (Ala. 2002)). The Alabama Supreme Court also stated that

> The Due Process Clause of the Fourteenth Amendment permits a forum state to subject a nonresident defendant to its courts only when that defendant has sufficient 'minimum contacts' with the forum state. International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The critical question with regard to the nonresident defendant's contacts is whether the contacts are such that the nonresident defendant ' "should reasonably anticipate being haled into court" ' in the forum state. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 295, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)."

Ex parte DBI, Inc., AT *8 (quoting Elliot, 830 So. 2d at 730). Moreover, "being physically present in a state is not required in order for a state court to have personal jurisdiction over a defendant." Ex parte DBI, Inc., at *19 (citing Burger King, 471 U.S. at 476).

The Alabama Supreme Court has also explained that "[d]epending on the quality and quantity of the contacts jurisdiction may be either general or specific" Ex parte Barton, 976 So. 2d 438, 443 (Ala. 2007). "General jurisdiction applies where a defendant's activities in the forum state are substantial or continuous and systematic, regardless of whether those activities gave rise to the lawsuit.... A court has specific jurisdiction when a defendant has had few contacts with the forum state, but those contacts gave rise to the lawsuit." Id. (internal quotations

5

and citations omitted). The action now before the Court falls under the latter.

However, the Court in Barton further explained that "regardless of whether jurisdiction is alleged to be general or specific, the nexus between the defendant and the forum state must arise out of an action of the defendant [that was] purposefully directed toward the forum State." Id. (citations omitted). "'This purposeful-availment requirement assures that a defendant will not be haled into a jurisdiction as a result of the unilateral activity of another person or a third person." Id. (internal quotations and citation omitted).

Based upon the facts alleged, C&M, a Texas corporation, entered into an agreement for repair of a vessel with Atlantic whose place of business is in Mobile County, Alabama.[2] The parties agreed that the agreement would be interpreted in accord with the laws of the State of Alabama. The parties also agreed to arbitration within the State of Alabama should dispute arise. The complaint does not allege whether the work upon the vessel was actually performed at Atlantic's Mobile, Alabama facility. In the supplemental memorandum, Atlantic states that all of the work took place at the shipyard in Mobile, Alabama. The complaint does allege that repairs were performed and Atlantic invoiced C&M for those repairs. The invoice required payment by wire transfer to Regions Bank in Birmingham, Alabama and identified Atlantic's address as: "Post Office Box 3202, Main Gate, Dunlap Drive, Mobile, Alabama 36652 USA". (doc. 16-4). C&M did not pay the invoice. Thus, C&M was not brought into court as a result of the activity of another or third person but instead on basis of its own failure to pay. The decision

---

[2] Former Alabama Rule 4.2(a)(2)(A) identified "transacting any business in this state" as sufficient contact. The new Rule, effective August 1, 2004, eliminated the list of sufficient contacts on basis that it was no longer necessary because the new Rule 4.2(b) explained when an appropriate basis for out-of-state service of process exists.

in Ex parte DBI, Inc, is instructive. Although DBI was based in Korea, the Alabama Supreme Court "echo[ed] what was said in McGee in 1957 and relied upon in World Wide Volkswagen in 1982: '[M]odern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity.'" Ex parte DBI, Inc., at *22. Therefore, the Court finds that C&M has engaged in "economic activity" within the State of Alabama and has had "sufficient minimum contacts" with this State that it "should reasonably anticipate being haled into court" here. International Shoe, 326 U.S. at 316; Burger King, 471 U.S. at 473.

The Court further finds that service of process upon C&M's registered agent for service of process was proper. Atlantic provided proof of service by both certified mail and personal service upon CT Corporation (doc. 13, doc. 16). See Nichols v. Pate, 992 So.2d 734, 736 (Ala. Civ. App. 2008) ("The failure to effect proper service under Rule 4, Ala. R. Civ. P., deprives the trial court of personal jurisdiction over the defendant and renders a default judgment void.") (citations omitted)

    B. Counts One and Two

The Eleventh Circuit has held that "a default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover, [but instead] a defaulted defendant is deemed to admit the plaintiff's well-pleaded allegations of fact" and "is not held to admit facts that are not well-pleaded or to admit conclusions of law." Tyco Fire & Sec., LLC v. Alcocer, 218 Fed. Appx. 860, 863 (11th Cir. 2007) (per curiam) (citations and internal quotations omitted). Therefore, "before entering a default judgment for damages, the district court must ensure that the well-pleaded allegations of the complaint . . . actually state a cause of

action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought." Id. (emphasis in original). Also, to assess damages, the Court has "an obligation to assure that there is a legitimate basis for any damage award it enters." Anheuser Busch, Inc. v. Philpot, 317 F.3d 1264, 1266 (11th Cir. 2007). Therefore, "a default judgment cannot stand on a complaint that fails to state a claim." Chudasama v. Mazda Motor Corp., 123 F.3d 1353, 1371 n. 41 (11th Cir. 1997).

By way of the choice of law provision, the parties agreed that the "agreement shall be construed and interpreted in accordance with the laws of the State of Alabama . . . " (doc. 1, Exhibit A., Article XXI). Also, since this action is before the Court on basis of diversity jurisdiction, the substantive law of the State of Alabama shall apply.

C. Liability

By default, C&M has admitted the well-pleaded facts in the complaint. The complaint establishes that Atlantic and C&M entered into an agreement for the repair and conversion of the vessel Ice Maiden. After completing the work, Atlantic submitted a final invoice in the amount of $565,163.56, which was not paid. The parties attempt at arbitration failed[3] and Atlantic filed this lawsuit. The evidence submitted in support includes a copy of the agreement (doc. 1, Exhibit A), a copy of the final invoice (doc. 1, Exhibit B, Invoice No. 3525), a copy of Atlantic's demand for arbitration, and C&M's response (doc. 1, Exhibits C-D). As to contract price, the agreement set forth as follows:

> Owner shall pay Contractor a price (the "Contract Price") to be agreed

---

[3] Atlantic alleges in its complaint that it received only C&M's initial response to the request for arbitration and that C&M did not respond to any further attempts by Atlantic to agree to an arbitrator and begin arbitration (docs. 1, 12).

8

> between the parties 30 days after receipt of specifications and approved drawings. The Contract Price is subject to adjustments allowed by this Agreement.
>
> Until such time as the Contract Price is agreed, Owner shall pay Contractor on a time and material basis. Contractor will invoice Owner for such time and materials items. Each invoice shall be settled and paid by Owner within fifteen days of date of issue.

(doc. 1, Exhibit A, Article IV).

By affidavit in support of the application for entry of default judgment, Atlantic asserts that the contract price of $565,163.56 was due on July 3, 2008 and was not paid. Breach of contract provides a cause of action and C&M is alleged to be a party to the agreement with Atlantic. Therefore, the well-pleaded allegations of the complaint state a cause of action against C&M. Accordingly, there is sufficient evidence to establish that C&M is in breach of the contract and liable to Atlantic.

### D. Damages

A "default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed.R.Civ.P. 54(c) (effective December 1, 2009). The amended complaint indicates that Atlantic seeks award of a judgment in the amount of $565,163.56[4] and for "damages, costs, attorneys' fee, and pre-judgment and post-judgment interest as is allowed by law" (doc. 12). In the application for default judgment, Atlantic asserts that it is entitled to liquidated damages of $565,163.56 pursuant to the agreement. Accordingly, C&M having been found liable to Atlantic, the Court awards damages for breach of contract in the amount of $565,163.56.

---

[4] Atlantic provided the Court with a copy of Invoice No. 3525A, the final invoice sent to C&M before filing the complaint (Doc. 12, Exhibit B).

There is no provision in the agreement or the invoice for the accrual of pre-judgment interest. However, in the first amended complaint, Atlantic seeks pre-judgment interest on its breach of contract counts. In the supplemental memorandum Atlantic argues that under admiralty law, an award of pre-judgment interest is within this Court's discretion and that the parties' agreement for the repair of the vessel is a maritime contract which would support admiralty jurisdiction.[5] However, the Court may not grant relief beyond that plead in the complaint. Fed. R. Civ. P. Rule 54(c) (a "default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."). Since Atlantic did not invoke the admiralty jurisdiction of this Court, but instead plead in the amended complaint that this Court has diversity jurisdiction, the request for pre-judgment interest based on admiralty law is denied.

However, regardless of whether Atlantic brought its complaint under admiralty law or diversity jurisdiction, since there is no provision for accrual of interest in their agreement, the law of the State of Alabama would apply.[6] Under Alabama law, Atlantic is entitled to pre-judgment interest at the rate of 6% per annum from July 3, 2008, the date payment was due according to the terms of the invoice. See Ala. Code. § 8-8-1; see West Alabama Health Services, Inc. v. J.T. May Drugs, Inc., 608 So.2d 749, 750 (Ala. Civ. App. 1992) (citing Rhoden v. Miller, 495 So.2d 54, 58 (Ala. 1986) ("Where no written contract controls the interest rate ..., the legal rate of pre-judgment interest is six percent per annum."); Ala. Code § 8-8-8 (providing

---

[5] Wilkins v. Commercial Investment Trust Corp., 153 F.3d 1273, 1276 (11th Cir. 1998) (contracts for repair of a vessel are maritime contracts).

[6] See Eastern Shore Marine, Inc. v. Smith, 2008 WL 2678438, *2 (S.D. Ala. July 2, 2008). ( "Admiralty courts enjoy broad discretion in setting prejudgment interest rates. . . . Because the plaintiff has identified no contractual interest rate or any other reasonable means of fixing the rate, the Court turns to state law." (internal quotations and citations omitted).

for accrual of interest on breach of contract from the date the "money ... should have been paid"). Accordingly, the Court awards pre-judgment interest at the rate of 6% per annum, accruing since July 3, 2008.

Atlantic also plead for post-judgment interest on its breach of contract counts. In the application for entry of default judgment, Atlantic argues that it should receive post-judgment interest at the rate of 12% per annum pursuant to the Alabama Prompt Pay Act, Ala. Code § 8-29-6 (1975). As will be discussed *infra*, the Act is not applicable. Moreover, "post-judgment interest shall accrue at the rate set by the federal statutory rate pursuant to 28 U.S.C. § 1961." Mitchell Co., Inc., v. Campus, 2009 WL 2567889, *2 (S.D. Ala. August 18, 2009); see, e.g., C. M. Brod. & Co., Inc. v. U.S. Home Corp., 759 F.2d 1526, 1542 (11th Cir.1985) (holding that in diversity cases, the federal statute for post-judgment interest applies).

In the application, Atlantic makes the conclusory statement that "judgment was rendered on the date of the entry of default, August 25, 2009" and that the Court should calculate interest from that date. (doc. 16, p. 3). However, "[p]ost-judgment interest begins to accrue on the date the trial court entered its judgment." Jones v. Regions Bank, - - - So. 3d - - -, 2009 WL 1643341, 10 (Ala. June 12, 2009) (citing Elmore County Comm'n v. Ragona, 561 So.2d 1092 (Ala.1990)). The trial court did not enter its judgment on August 25, 2009. Thus, post-judgment interest shall accrue from the date that this Court enters judgment. Accordingly, the Court awards post-judgment interest at the federal statutory rate of 0.41% % per cent per annum which shall begin to accrue upon entry of judgment by this Court.

E. Attorneys' fees and costs

The agreement does not provide for payment of attorney fees and costs by a party in

default. The agreement does provide that it "shall be construed and interpreted in accordance with the laws of the State of Alabama" (doc. 1, Exhibit A, Article XXI). In its application, Atlantic argues that the Alabama Prompt Pay Act, Ala. Code § 8-29-6 (1975), applies because of the parties' choice of law and therefore, it is entitled to reasonable and necessary attorneys' fees of $34,367.50 and reasonable costs of $1,556.61.

The Court ordered additional briefing as to how the Act applies to an agreement for repair and conversion of a vessel when the Act's definition of contractor, subcontractor, and sub-subcontractor appears limited to entities which improve or perform construction services upon real property, or furnish labor or materials in connection with such. The Court gave as an example, the Act's definition of "Contractor" as "[a]ny person, individual, firm, corporation, partnership, or other legal entity who contracts with an owner to improve real property or perform construction services for an owner" Ala. Code § 8-29-1(1), and the Act's definition of "Owner" as "[a]ny person, individual, firm, corporation, partnership, or other legal entity who has an interest in the real property improved and for whom an improvement is made, who either directly or by agent ordered the improvement to be made." Id. at (4).

In response, Atlantic begins its supplemental brief by arguing that this agreement is a maritime contract. While that may be true, as explained supra, Atlantic did not invoke the maritime jurisdiction of this court, but instead, plead diversity jurisdiction. Again, since the relief obtained cannot be different from that plead, Atlantic cannot obtain relief based upon the maritime nature of this contract. Fed. R. Civ. P. Rule 54(c) (a "default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings.").

Atlantic argues that although there is no provision in the agreement for attorneys' fees

and costs, the "Contract's choice of law provision provides that Alabama law governs" and therefore, since the Act is part of Alabama law, it applies to this agreement. The agreement provides for construction and interpretation "in accordance with the laws of the State of Alabama" (doc. 1, Exhibit A, Article XXI). However, construing or interpreting this agreement, maritime in character or not, in accordance with the Act, yields the result that the Act does not apply. To apply this Act in the manner sought by Atlantic, essentially disregarding the definitions found therein, would not be "in accordance" with the substantive laws of the State of Alabama. Simply because a state's law may govern an agreement does not mean that this Court may interpret that state's substantive law in a manner inconsistent with the state's own statutory definitions and interpretations. The issue is not whether the application of the Act conflicts with maritime law or maritime interests or whether Alabama has a substantial relationship to Atlantic, but whether the Act applies to the agreement. Since the Act is limited by definition to contracts involving improvements to real estate or construction upon real estate, it does not apply.

Atlantic also argues that application of the Act would not conflict with the fundamental purpose of maritime law or settled maritime law that attorneys' fees are generally not recoverable, i.e., the American rule, except in certain circumstances. Atlantic states that an award of attorneys' fees under maritime law is available if provided by the statute governing the claim, i.e., the Alabama Prompt Pay Act by way of the choice of law provision, or where there was bad faith during the litigation by the non-prevailing party, or where the contract provides for attorneys' fees. In support, Atlantic cites Coastal Fuels Marketing, Inc. v. Florida Exp. Shipping Co., Inc., 207 F.3d 1247 (11th Cir. 2000), wherein the Court explained that a "party is not entitled to attorney's fees in an admiralty case unless fees are statutorily or contractually

authorized." Id.[7] Hence, Atlantic's reliance upon the Alabama Prompt Pay Act, as a statute governing the claim. Again, however, by definition, the Act only applies to contracts related to improvements to real property or construction upon real property. Accordingly, Atlantic's application for attorney fees and costs under the Alabama Prompt Pay Act is denied.

F. Count Three

Atlantic also brought Count Three for tortious interference with a contract (doc. 12). Although the introduction to Atlantic's application for entry of default judgment identifies Count Three as one of three counts in the first amended complaint, Atlantic does not argue that it is entitled to default judgment as to this tort claim or any damages in tort.

Under Alabama law, the elements of tortious interference with a contract "are (1) the existence of a protectible business relationship; (2) of which the defendant knew; (3) to which the defendant was a stranger; (4) with which the defendant intentionally interfered; and (5) damage." White Sands Group, L.L.C. v. PRS II, LLC, 2009 WL 2841114, 7 (Ala. 2009) (slip copy). In the first amended complaint, Atlantic alleges that the "actions of C&M have interfered with Atlantic Marine's current and prospective contractual relations" and that as a result "of this tortious interference" Atlantic is entitled to damages. (doc. 12, p. 6). Nowhere therein does Atlantic allege the identity of the other party to these "current and prospective contractual relations". Therefore, it is unclear whether Atlantic means that C&M has interfered with the relationship between Atlantic and C&M. If that is so, then C&M is not a "stranger" to that relationship. If Atlantic means to allege that C&M has interfered with the relationship between

---

[7] The charter contained a "a specific contractual provision" in Paragraph 35 "for the recovery of attorney's fees as damages for breach of the charter." Id. at 1250-1251.

Atlantic and unidentified parties to "current and prospective business relations", such that C&M may be a "stranger", this allegation is not well-plead. Moreover, there is no allegation that C&M had knowledge of the existence of a protectible business relationship with any third party and intentionally interfered in that relationship.[8]

Although default has been entered as to C&M, it "is not held to admit facts that are not well-pleaded or to admit conclusions of law". Tyco, 218 Fed. Appx. at 863. Therefore, the Court finds that Count Three fails to state a claim upon which relief can be granted because Atlantic failed to plead a sufficient factual basis for the elements of this Count. See Fed. R. Civ. P. Rule 12(b)(6); Tyco, 218 Fed. Appx. at 863 ("before entering a default judgment for damages, the district court must ensure that the well-pleaded allegations of the complaint . . . actually state a cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought."); Chudasama, 123 F.3d at 1371, n.41("a default judgment cannot stand on a complaint that fails to state a claim."). Accordingly, the application for entry of default judgment as to Count III is **DENIED** and Count III is **DISMISSED**.

**DONE** this the 5th day of January, 2010.

                                                **/s/ Kristi K. DuBose**
                                                **KRISTI K. DuBOSE**
                                                **UNITED STATES DISTRICT JUDGE**

---

[8] Atlantic does allege that C&M contended that one of its affiliated entities was the beneficiary of the work performed on the vessel and that it is indebted to Atlantic (doc. 12, p.3) But, Atlantic does not identify this affiliated entity nor allege that it had a "current and prospective" business relationship with that entity.